Order of disposition, Family Court, Bronx County (Allen G. Alpert, J), entered on or about June 22, 2012, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed acts that, if committed by an adult, would constitute the crimes of forcible touching and sexual abuse in the third degree, and placed him on probation for a period of 12 months, reversed, as an exercise of discretion in the interest of justice, without costs, the delinquency finding and dispositional order vacated, and the matter remanded to Family Court with a direction to order an adjournment in contemplation of dismissal pursuant to Family Court Act § 315.3 (1) nunc pro tunc to June 22, 2012.
By petition dated January 11, 2011, appellant was charged with sexual abuse in the first degree (a D felony), forcible touching (an A misdemeanor) and sexual abuse in the third degree (a B misdemeanor). At the fact-finding hearing on these charges, the 14-year-old female complainant testified on direct examination that, on November 23, 2010, she walked home from school with appellant, who was 15V2 years old at the time of the incident. During the complainant’s walk home with appellant (whom she saw everyday at school), he asked her to kiss him, which she refused to do. He persisted in asking for a kiss, but she continued to say no. She told him to go somewhere else because she “did not want problems.” At some point, appellant pulled her by the arm and again asked for a kiss, and she again refused. Appellant then placed his hands on the complainant’s shoulders, put her against the wall of a shop, and lowered her blouse and bra. He then kissed her on the mouth two times, *461 kissed her breasts two times and kissed her neck once. The complainant told appellant to leave her alone, pushed him away and started walking away fast. Appellant followed her, saying, in a voice that sounded “sexual,” that he would not leave until she gave him a kiss. The complainant continued walking and, when she reached her home, she told appellant that she would not open the door until he left. Appellant said that he would not leave until she gave him a kiss. The complainant again told him to leave because she did not want problems and that her mother was in the laundry; appellant replied there was no laundry. The complainant told him there was a laundry, opened the door and pressed the button for the elevator. When the elevator arrived, appellant entered it with her; when they arrived at the complainant’s floor, appellant grabbed her to kiss her and she bit his lips. She then left appellant, who told her that was “how he liked women.”
On cross-examination, the complainant admitted that she spoke to her friend Jason about the incident and told Jason that she did not want anything to happen to appellant. She initially denied that she told Jason that her father was making her do this or that the superintendent of the building had come to her apartment on the night of November 23, 2010. She did text the appellant that night telling him that she would have gotten in big trouble and that the police came to her house that night because of what he had done in the elevator. Although she texted appellant that the police came to her house that night, in fact they came the next day after her father called the police. The complainant further testified that she sent appellant a text message on January 23, 2011, at 2:32 a.m., saying “Come on, Juan, please don’t be mad at me.” She also sent texts saying “I don’t want you to be like this with me” and that she wanted to be his friend. She texted further that it was not her fault that this was happening, that she had done everything to defend him and that she had told him once before why this was happening, namely, that her father was making her do this. Appellant did not respond to the complainant’s texts. The cross-examination then turned to the subject of the complainant’s conversation with her friend Jason a few days before the hearing, on September 30, 2011, which apparently had been taped.[1] The complainant stated in that conversation that this was all happening because of the “damn super” and her father.
*462 At the conclusion of the fact-finding hearing, the court dismissed the first count (the only one charging a felony) but sustained the two misdemeanor counts. Thereafter, the probation department submitted an investigation report, which stated in pertinent part: “Based on the serious, sexual nature of the instant offense that [appellant] sexually abused the victim in the street, he needs sex offender treatment counseling and the Department of Probation’s intensive supervision services, ESP Probation to help deter him from further delinquent activity and protect the community.”
At the dispositional hearing, the presentment agency indicated that it disagreed with the foregoing recommendation to give appellant ESP probation. Rather, the presentment agency told the court that general supervision probation would be sufficient. The court thereupon imposed the aforementioned disposition of 12 months of probation.[2]
The court’s finding was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). While appellant has raised issues concerning the credibility of the sole witness against him, we do not think that the record, viewed as whole, warrants disturbing the hearing court’s resolution of those issues.
However, we conclude that an adjournment in contemplation of dismissal (ACD) would have been the least restrictive dispositional alternative consistent with appellant’s needs and the community’s need for protection (see e.g. Matter of Tyvan B., 84 AD3d 462 [1st Dept 2011]; Matter of Anthony M., 47 AD3d 434 [1st Dept 2008]). We note that an ACD could have been made subject to conditions, such as counseling and educational requirements. This was appellant’s first offense, and he had an exemplary academic record, along with strong recommendations from school personnel.[3] There is no indication that he has unsavory friends or a record of school disciplinary problems, truancy or poor grades (cf. Matter of Narvanda S., *463 109 AD3d 710 [1st Dept 2013]). On the contrary, appellant, who has a strong social support network, received an award for perfect school attendance and, upon graduation from eighth grade, an assemblyman and senator from the area awarded him a certificate of merit for academic achievement. He has also demonstrated leadership in sports. Additionally, appellant participated in a sexual behavior program and expressed remorse for his actions. Furthermore, appellant stayed out of trouble for the 18 months that the case was pending. Based on all these factors, there is no reason to believe that appellant needed any supervision beyond that which could have been provided under an ACD.
The dissent asserts that our disposition of this appeal “unjustifiably interferes with the judgment of the trial court,” and expresses “concern” over our decision. While we respect the differing judgment of the dissent (and of the trial court), we believe that our determination that an ACD should have been issued — a disposition that by no means reflects extraordinary leniency — is justified for the reasons already discussed. Moreover, we see no warrant for the dissent’s professed “concern” over our decision, given that we merely replace a sentence of 12 months of probation — a sentence that appellant has already successfully served — with a retroactive ACD that, if issued at the original disposition, would have involved supervision of six months.[4]
The dissent, while acknowledging that we do not disagree on what the complainant said on cross-examination, asserts that we differ on the conclusion to be drawn from some of that *464 testimony. Although the dissent is obviously correct to the extent it takes the position that the complainant’s testimony on cross-examination does not necessarily discredit her other testimony, the dissent’s apparent view that there was no issue at all as to the complainant’s credibility is one-sided, to say the least. In any event, the point of the dissent’s discussion is unclear, since, as previously stated, we determine that the fact-finding against appellant was not only supported by legally sufficient evidence but was consistent with the weight of the evidence. The weight-of-the-evidence determination requires us to review all of the evidence in the record, not only the evidence supporting the presentment agency’s case. Our dissenting colleague, by contrast, limits the recitation of the hearing testimony in her opinion to the complainant’s direct testimony, and focuses on the details most damning of appellant. Since the dissenter insists on publicizing the evidence most favorable to the presentment agency, and only that evidence, we deem it proper to balance the picture of the record she presents with a summary of portions of the complainant’s testimony on cross-examination.[5]
Needless to say, we share the dissent’s disapproval of the conduct in which appellant was found to have engaged, which was completely unacceptable. Given that the accused is a juvenile, however, we are bound to view his conduct, which was a first offense, in the context of his total life circumstances for the purpose of determining the least restrictive dispositional alternative consistent with both appellant’s needs and the need for protection of the community, including the complainant. We disagree with the dissent’s view that a disposition constituting the least restrictive alternative consistent with the needs of the community and of the accused juvenile fails to treat misdemeanor sexual misconduct between adolescents with appropriate seriousness. A least restrictive disposition is what is required as part of our juvenile justice system (see Family Ct Act §§ 352.1, 352.2), and the dissent, by focusing solely on the misconduct as *465 the basis for the disposition — which is what the dissenter seems to do, in spite of her claim to have “tak[en] into account all of the circumstances” — fails to balance the needs and circumstances of this particular appellant, as the statute requires us to do (see Narvanda S., 109 AD3d at 712). Viewing the case in that context, and considering that the misdemeanor misconduct at issue was an aberration on the part of an otherwise promising young individual, we believe that appellant’s prospects for rehabilitation, considered at the time of disposition, were favorable enough to warrant the issuance of an ACD. Indeed, we are puzzled by the dissent’s dismissal of the supporting letters offered by appellant’s teachers, which discuss not only his character but also his achievements. Obviously, however, the letters do not discuss this incident because the writers have no knowledge of it. If an ACD is not appropriate for this appellant, whose record is unblemished except for this one incident, one wonders whether there is any juvenile charged with misdemeanor sexual abuse who would qualify for an ACD.[6] Concur— Friedman, J.E, Acosta and Gische, JJ.

. The dissent’s observation that there is no transcript of the taped conversation (which is in Spanish), while true, is irrelevant. The complainant was asked questions relating to the taped conversation at the hearing, and that examination is, of course, part of the record.

. While our dissenting colleague places much reliance on the probation department’s recommendation, it bears emphasis that, as noted above, not even the presentment agency adopted the department’s sanction recommendation in full.

. Appellant’s ESL teacher noted that he had an overall grade-point average of “close to 90%” as of March 2012, and also wrote of him: “[He] has taken on a strong sense of responsibility with his grades and academic progress. He has a sense of self discipline for completing his work, maintaining a high GPA and being present in class every day. [He] is a natural leader and it is seen in the classroom. He is the first one to volunteer to assist whenever needed. In addition to being invested in his academics, [he] invests himself *463 whole heartedly in the . . . [s]chool’s baseball team. He recently became team captain as a result of his commitment and work ethic.”
Appellant’s college preparatory teacher and baseball coach wrote of him:
“He has exceeded [sic] in his studies and as a class leader. He is boasting a 90 GPA and this is coming from a student who has been an ESL student since his freshman year. I cannot begin to express my admiration for this student. He conducts himself with such humility that it is a pleasure to work with him. ... I know that he can and will shine in college.
“I . . . named [appellant] captain of the baseball team. I explained to the team that [he] is a wonderful example of what I expect from my players, great grades, leadership qualities, as well as being a hard working player who is both modest about [his] ability and helpful to those who could use help both on and off the field.”

. The dissent complains that it is not the Appellate Division’s role, on an appeal from a delinquency adjudication, to consider events that have occurred since the order of disposition was entered. While we generally agree with the dissent on this point, we refer to such post-disposition occurrences in this writing, not because they determine the outcome of the appeal, but to further highlight the undue severity of the dissent’s approach.

. We do not recapitulate all of the testimony by the complainant on cross-examination that might put in question the credibility of her direct testimony. Further, while the dissent seems to fault us for failing to accept automatically the trial court’s findings and credibility determinations, it bears noting that the trial court itself may not have fully accepted the complainant’s testimony. As previously noted, appellant was also charged with sexual abuse in the first degree. Although the evidence presented was arguably sufficient to sustain that charge, the trial court nevertheless dismissed it. In response to the dissent’s unsupported speculation about the reasons for the post-incident conduct to which the complainant admitted upon cross-examination, we note that this is not a case of domestic violence.

. Our reversal for issuance of an ACD in this case is entirely consistent with Matter of Najee A. (26 AD3d 258 [1st Dept 2006], lv denied 7 NY3d 703 [2006]), a case cited by the dissent in which we affirmed a sentence of probation. The appellant in Najee was found to have committed acts equivalent to two counts of sexual abuse in the first degree (a felony), as well as forcible touching, based on conduct more egregious than appellant’s misconduct here— specifically, “rubbing his clothed penis against the victim’s buttocks while attempting to pull down the victim’s pants” (26 AD3d at 259).